PARIENTE, C.J.,
dissenting.
While nothing in the constitutional right against double jeopardy prevents a defendant from being charged and convicted of multiple separate crimes arising from a single act, double jeopardy does prevent a defendant from being convicted twice of the same core offense. Yet the majority decision today permits dual convictions on degree variants of the same core offense, battery, for firing one shot that struck a police officer.
The illogic of this result is demonstrated by what would have happened if the defendant had been convicted of the crimes actually charged in counts VI and VII. In that event, double jeopardy would have prevented him from being convicted twice of attempted murder of the same victim. Further, had the victim died and the defendant been found guilty of a completed murder, a separate conviction for the same act would also have to be vacated. See Campbell-Eley v. State, 718 So.2d 327 (Fla. 4th DCA 1998); Laines v. State, 662 So.2d 1248 (Fla. 3d DCA 1995), receded from on other grounds, Grene v. State, 702 So.2d 510 (Fla. 3d DCA 1996). Instead, because the victim survived and the jury found the defendant guilty of two distinct lesser included offenses, aggravated battery of a LEO in count VI and attempted second-degree murder with a firearm in count VII, the majority concludes that no double jeopardy violation occurred.
*950 Something is wrong with this picture— and with the underlying analysis. In Gordon v. State, 780 So.2d 17 (Fla.2001), we held that convictions as charged of attempted first-degree murder with a firearm and aggravated battery causing great bodily harm did not cause a double jeopardy violation. In light of the almost identical counts of attempted murder charged for a single act in this ease, which resulted in convictions of different lesser included offenses, it is now clear to me that Gordon rests upon an error in legal analysis and is unacceptable in actual practice. See Puryear v. State, 810 So.2d 901, 905 (Fla.2002) (“The doctrine of stare decisis bends where ... there has been an error in legal analysis.”); Brown v. State, 719 So.2d 882, 890 (Fla.1998) (Wells, J., dissenting) (“[Intellectual honesty continues to demand that precedent be followed unless there has been a clear showing that the earlier decision was factually or legally erroneous or has not proven acceptable in actual practice.”).
In.Gordon, this Court approved a district court decision affirming convictions of attempted first-degree murder, aggravated battery causing great bodily harm, and felony causing bodily injury for the defendant’s act of shooting the victim during a robbery attempt. See 780 So.2d at 18, 25. Applying the exception in section 775.021(4)(b)(2), Florida Statutes (2004), to the statement of legislative preference that a defendant be convicted for each crime committed in a criminal episode, we adopted language from Justice Shaw’s dissenting opinion in Carawan v. State, 515 So.2d 161, 173 (Fla.1987). Justice Shaw stated in Carawan that “[t]he primary evil of aggravated battery is that it inflicts physical injury on the victim[, whereas] the primary evil of attempted homicide is that it may inflict death.” See id., quoted in Gordon, 780 So.2d at 23. This Court therefore concluded in Gordon that the crimes were “not ‘degree variants’ of the same underlying offense” for which dual convictions are unauthorized pursuant to section 775.021(4)(b)(2). 780 So.2d at 25.
Gordon’s focus on a “primary evil” in applying section 775.021(4)(b)(2) was a departure from our precedent construing and applying the provision. In Sirmons v. State, 634 So.2d 153, 154 (Fla.1994), this Court had held that convictions of robbery with a weapon and grand theft of an automobile were impermissible under section 775.021(4)(b)(2) because the offenses were “merely degree variants of the core offense of theft.” We relied on previous decisions in which we had found double jeopardy violations for dual convictions of other crimes which were also aggravated forms of theft. See id. at 153-54 (citing to Johnson v. State, 597 So.2d 798 (Fla.1992), and State v. Thompson, 607 So.2d 422 (Fla.1992)). Subsequently, in State v. Anderson, 695 So.2d 309, 311 (Fla.1997), we reaffirmed and extended Sirmons, holding that two offenses can be considered “degree variants” of the same core offense even when they are not degrees of the same offense within the same statutory chapter. See also Hayes v. State, 803 So.2d 695, 700 (Fla.2001) (stating that multiple convictions premised upon a single taking of the victim’s property would be invalid under Sirmons).
The Court in Gordon adopted a narrow reading of Sirmons. The. Court initially noted that in his Sirmons concurrence, Justice Kogan stated that theft, battery, possession of contraband, and homicide are the type of core offenses upon which other criminal charges are based. The Court in Gordon then stated:
Extended to its logical extreme, a broad reading of Sirmons and the second statutory exception would render section 775.021 a nullity. Indeed, the plethora *951 of criminal offenses is undoubtedly derived from a limited number of “core” crimes. In no uncertain terms, the Legislature specifically expressed its intent that criminal defendants should be convicted and sentenced for every crime committed during the course of one criminal episode. See § 775.021(4)(b). The courts’ exceptions for homicides, ... and theft, where the nature of the crime is often defined by degree of the violation, are consistent with the limited statutory exception. However, extension of this exception to multiple convictions for attempted first-degree murder, aggravated battery, and felony causing bodily injury would contravene the plain meaning of section 775.021.
780 So.2d at 28.
Although I concurred in the per curiam opinion in Gordon, I now conclude that section 775.021(4)(b)(2) should not be applied so restrictively. Nothing in the language of the provision supports limiting this exception to any specific list of core offenses. Indeed, other courts have extended section 775.021(4)(b)(2) beyond the four core offenses identified by Justice Ko-gan. See, e.g., Jones v. State, 764 So.2d 659, 660 (Fla. 1st DCA 2000) (“Both offenses for which appellant was convicted share the same common core criminal conduct, resisting an officer.”); Hardy v. State, 705 So.2d 979, 980 (Fla. 4th DCA 1998) (observing that because offenses of leaving the scene of an accident involving death and leaving the scene of an accident involving injury “are different degrees of the same crime, the legislature may have intended only a single conviction”); Beltran v. State, 700 So.2d 132, 135 (Fla. 4th DCA 1997) (“Sexual battery arose from the common law crime of rape and appears to be its own category of core offense.”).
Further, the concern expressed in Gordon that the exception in subsection (4)(b)(2) must be limited so it will not swallow the rule, in subsection (4)(b) is overstated. If convictions truly derive from different “core offenses” or “basic crimes,” dual convictions are authorized. See, e.g., Austin v. State, 852 So.2d 898, 901 (Fla. 5th DCA) (holding that aggravated battery and resisting an officer with violence grow out of different core crimes), review dismissed, 860 So.2d 976 (Fla.2003); Hale v. State, 838 So.2d 1185, 1189 (Fla. 5th DCA) (approving dual convictions because trafficking in stolen property has as its core a theft offense and receiving money from a pawnbroker by false verification of ownership has as its core violation of the duty not to lie), review denied, 848 So.2d 1154 (Fla.2003). However, where the two convictions are for offenses that are merely aggravated forms of the same underlying offense, only a single conviction is ' proper under section 775.021(4)(b)(2). Both the rule and the exceptions can retain a reasonable field of operation without arbitrarily limiting core offenses to a narrow few.
Therefore, I conclude that Gordon’s focus on whether convictions punish the same “primary evil,” 780 So.2d at 23, rather than on whether they constitute “degree variants of the core offense,” Sirmons, 634 So.2d at 154, was improper.[4] The “primary evil” analysis applied in Gordon in lieu of determining whether the crimes had the same core offense reinvigorated a *952 concept that should have been put to rest with the 1988. enactment of the amendment to section 775.021(4), the Legislature’s response to Carawan. In using the term “primary evil” in Carawan, which was decided in 1987, Justice Shaw was responding to the majority’s determination in that case, that the statutory offenses of attempted manslaughter and aggravated battery “addressed essentially the same evil.” 515 So.2d at 170. Justice Shaw was obviously not referring to the 1988 legislation abrogating Carawan contained in section 775.021(4)(b)(2), Florida Statutes. See generally State v. Smith, 547 So.2d 613, 617 (Fla.1989) (acknowledging that Cara-wan was overridden by in chapter 88-131, section 7, Laws of Florida).
The 1988 amendment to section 775.021(4) and its abrogation of Carawan shifted the focus away from whether two offenses address the same evil. Under the exception in subsection (4)(b)(2) to the legislative preference for a conviction for each offense committed in a criminal episode, the proper inquiry became whether multiple convictions for a single act derive from the “same offense” or, as stated in Sir-mons, the same “core offense.” The difference between “primary evil” and “core offense” is not merely semantic. In Gordon, the majority quoted Justice Shaw’s statement in Carawan that the “the primary evil of attempted homicide is that it may inflict death,” and said that the primary evil of attempted first-degree murder is that it “punishes the intent to kill.” 780 So.2d at 23. In contrast, under Sir-mons a determination of the core offense takes into account the criminal conduct as a whole, rather than either solely the potential harm (the possible infliction of death) or the defendant’s intent (the intent to kill) in isolation. See, e.g., Anderson, 695 So.2d at 311 (concluding that dual convictions under different provisions punishing “the same basic crime (i.e., the violation of a legal obligation to tell the truth)” were invalid); Khan v. State, 704 So.2d 1129, 1131 (Fla. 4th DCA 1998) (holding that dual convictions for interfering with the custody of a child and removing a child from the state contrary to a court order were invalid because they “punish the same basic crime”).
Therefore, I conclude that the Court’s double jeopardy analysis in Gordon is contrary to Sirmons and Anderson, and therefore a misapplication of section 775.021(4)(b)(2). Rather than rely on Gordon, the Court should ascertain the true core offenses of the crimes in this case.
In an analysis pursuant to Sirmons, the core offense of aggravated battery is obviously battery, its core element. See State v. Reardon, 763 So.2d 418, 420 (Fla. 5th DCA 2000), review dismissed, 806 So.2d 446 (Fla.2002). Ascertaining the core offense of attempted second-degree murder is more difficult. A completed homicide is a core offense in itself. See Beltran, 700 So.2d at 135 (“As Justice Kogan noted in Sirmons, homicide is its own core offense.”). However, in my view, homicide is not the core offense for attempted homicide.[5] This Court has consistently stated that degree variants are “aggravated forms” of the core or underlying offense. *953 See Gordon, 780 So.2d at 21; Sirmons, 634 So.2d at 154; Goodwin v. State, 634 So.2d 157, 157 (Fla.1994). Attempted second-degree murder is clearly not an aggravated form of the underlying offense of second-degree murder.[6] Accordingly, the core offense for attempted second-degree murder must lie outside the homicide statute.
I conclude that battery, in addition to being the core offense for aggravated battery, is also the core offense for attempted second-degree murder, regardless of whether the victim is struck or injured. As previously stated, a battery is an intentional, nonconsensual touching or striking. See § 784.03(l)(a), Fla. Stat. (2004). When the victim is struck or injured in the murder attempt, attempted first- or second-degree murder is a battery aggravated by the more culpable mental state of premeditation or a depraved mind regardless of human life. When there is no victim contact, attempted murder is an aggravated form of attempted battery.[7]
Consequently, attempted second-degree murder and aggravated battery are merely degree variants of the core offense of battery pursuant to section 775.021(4)(b)(2). This determination would preclude dual convictions for a single act constituting a murder attempt, and would bring attempted homicide into alignment with the rule, referred to in Gordon, 780 So.2d at 23, that a single homicide can yield only a single conviction. See, e.g., State v. Chapman, 625 So.2d 838, 839 (Fla.1993) (stating that “a single death cannot support convictions of both DUI manslaughter and vehicular homicide”); Houser v. State, 474 So.2d 1193 (Fla.1985) (stating that “only one homicide conviction and sentence may be imposed for a single death.”); Campbell-Eley, 718 So.2d at 330 (concluding that defendant could not be convicted of both second-degree murder and aggravated battery on a pregnant woman for a single homicidal assault); Laines, 662 So.2d at 1249-50 (holding that sentences for both aggravated battery and second-degree murder could not be imposed for a single deadly attack). Allowing dual convictions only when the victim survives, premised solely on the fact that “an actual homicide did not occur,” Gordon, 780 So.2d at 25, is illogical. Just as there is no “rational basis in the evidence” to support convictions of murder and aggravated battery for a single death, Campbell-Eley, 718 So.2d at 329, there is no rational basis to allow the aggravated battery conviction only in those cases in which the intended victim survives the murder attempt.
Finally, while not dispositive I find it noteworthy that the State agreed at sentencing that sentence could be withheld on the offense of aggravated battery on a law enforcement officer in count VI. Because the defendant is spending the rest of his life in prison for the crime of attempted second-degree murder with a firearm in count VII, the views in both the majority *954 and dissenting opinions concern the underlying principles rather than any actual consequence to this defendant. And while it is one thing for the State to charge variants of the same crime to make sure that the defendant receives the maximum sentence, it is quite another to allow multiple convictions for what is essentially the same crime.
Accordingly, I would recede from Gordon’s holding that dual convictions of attempted first-degree murder and aggravated battery causing great bodily harm are permitted under section 775.021(4)(b)(2) for firing a single shot that strikes a victim but does not result in death. In this case, I would hold that the conviction of aggravated battery on a law enforcement officer in count VI, on which sentence was withheld, must be vacated pursuant to a correct application of section 775.021(4)(b)(2) to the offenses here. I therefore dissent from the Court’s decision in this case.
ANSTEAD, J., concurs.

. In Gordon, the defendant was convicted as charged of both attempted first-degree murder and aggravated battery. See 780 So.2d at 18. The defendant in this case was convicted of attempted second-degree murder and aggravated battery as lesser included offenses on counts whose only difference, both as to the charged crimes and the lesser included offenses, was the element of the law enforcement officer victim in count VI. This distinction from Gordon leads me to see this issue in a new light.

. District courts have held to the contrary in determining that convictions of both attempted premeditated (first-degree) or depraved mind (second-degree) murder and attempted felony murder for a single killing violate double jeopardy. See Tucker v. State, 857 So.2d 978 (Fla. 4th DCA 2003); Mitchell v. State, 830 So.2d 944 (Fla. 5th DCA 2002). I would reach the same result, but because the core offense of both crimes is battery rather than homicide. Attempted felony murder, as codified in section 782.051(1), Florida Statutes (2004), requires “an intentional act that is not an essential element of the felony and that could, but does not, cause the death of another.”

. In general, convictions of both attempt and the completed crime are precluded not because of a double jeopardy bar but because failure (attempt) and success (the completed crime) are factually exclusive of one another. See § 777.04(1), Fla. Stat. (2004) (providing that person who attempts to commit offense "but fails in the perpetration or is intercepted or prevented in the execution thereof” is guilty of criminal attempt).

. To the extent that assault can be viewed as a core or precursor offense to an attempted murder in which there is no allegation of victim contact, it is only in its common law sense of attempted battery. See Antonacci v. State, 504 So.2d 521, 522 n. 1 (Fla. 5th DCA 1987) (stating that at common law, what is now assault was punished as attempted battery); Savino v. State, 447 So.2d 411, 413 (Fla. 5th DCA 1984) (Cowart, J., concurring specially) (same).