LEWIS, J.,
dissenting.
Under the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution, no person may “be subject for the same offense to be twice put in jeopardy of life or limb.” This clause effectively “prohibits successive prosecution or multiple punishment for ‘the same of-fence,’ ” Witte v. United States, 515 U.S. 389, 390, 115 S.Ct. 2199, 132 L.Ed.2d 351 (1995), and “was designed as much to prevent the criminal from being twice punished for the same offence as from being twice tried for it.” Id. at 396, 115 S.Ct. 2199 (quoting Ex parte Lange, 85 U.S. (18 Wall.) 163, 173, 21 L.Ed. 872 (1873)). It also “represents a fundamental ideal in our constitutional heritage,” and the Due Process Clause of the Fourteenth Amendment to the United States Constitution makes it applicable to the States. Benton v. Maryland, 395 U.S. 784, 794, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969).
In Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932), the United States Supreme Court articulated a test used in determining whether two offenses are the same for double jeopardy purposes. Under the Blockburger test, “where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.” Witte, 515 U.S. at 396, 115 S.Ct. 2199 (quoting Blockburger, 284 U.S. at 304, 52 S.Ct. 180).
For many decades, this Court used the “core offense/primary evil” approach to decide double-jeopardy challenges. See State v. Paul, 934 So.2d 1167 (Fla.2006); State v. Florida, 894 So.2d 941 (Fla.2005); Gordon v. State, 780 So.2d 17 (Fla.2001); State v. Anderson, 695 So.2d 309 (Fla.1997); Sirmons v. State, 634 So.2d 153 (Fla.1994); State v. Thompson, 607 So.2d 422 (Fla.1992); Carawan v. State, 515 So.2d 161 (Fla.1987). This Court utilized Blockburger to interpret statutory provisions, but did not rigidly apply a proof of elements singular test. See Carawan, 515 So.2d at 164-65. Without reference to any decisional law from this Court or Florida’s district courts of appeal that exhibited the impracticality of that approach, any neces *858 sity to abrogate it, or any miscarriage of justice, in Valdes v. State, 3 So.3d 1067 (Fla.2009), this Court departed from decades of well-established law and prescribed that courts adhere to the strict tenets of the Blockburger test enumerated in section 775.021(4), Florida Statutes (2009), when deciding double jeopardy challenges. Valdes, 3 So.3d at 1075-77. The majority decision today represents the paradigm wrongly and rigidly created by Valdes, and the dangerous implications running from its mandate that courts adhere exclusively to a strict and rigid application of the Blockburger test when deciding double-jeopardy challenges. See id. at 1075-77.
By rigidly examining only the strict wording of a single statute in isolation to determine if multiple punishments violate double jeopardy, a court may easily misinterpret whether the Legislature intended to impose a multitude of punishments for a single evil or wrong committed during a single episode. This is in opposition to the intended purpose of the Blockburger test, which, along with the rule of lenity, was to serve as a rule of construction that assisted courts in discerning legislative intent— not decide what that intent was. See Carawan, 515 So.2d at 166-67 (stating that the Blockburger test and the rule of lenity are rules of construction that “serve no purpose other than assisting the courts in ascertaining the true legislative intent behind a particular ambiguous statute and carrying that intent into effect to the fullest degree possible,” and that “the Block-burger test itself, as a rule of construction, will not prevail over actual intent”).
In contrast, the “core offense/primary evil” approach utilized the Blockburger test in a way that comported with its original design, i.e., it applied that test as a guide to assist a court in its determination as to whether the Legislature intended to inflict multiple punishments for two separately codified crimes committed in a single episode or by a single act. Under that approach, a court would initially search for legislative intent through an examination of the express wording of the statutes at issue. See id. at 165. If that wording did not illustrate the Legislature’s intent, a court would then invoke the Blockburger test, as codified in section 775.021(4), to help discern the intent. See id. at 167. “Subsection 775.021(4) was to be treated as an ‘aid’ in determining legislative intent, not as a specific, clear, and precise statement of such intent.” Valdes, 3 So.3d at 1072 (emphasis added). Along with section 775.021(4)’s directives, a court was to consider whether the two statutory offenses at issue concerned the “same evil.” Carawan, 515 So.2d at 168. In accord with the rule of lenity, even if two statutory offenses “contain[ed] a unique statutory element and [were] separate under subsection 775.021(4),” if the two offenses concerned the same evil, double jeopardy guarded against multiple punishments for those offenses. Valdes, 3 So.3d at 1072 (citing Carawan, 515 So.2d at 167-68).
Conversely, the Valdes decision, along with its strict and rigid application of Blockburger, disregards double jeopardy protection in instances where, although a statute does not explicitly provide for double jeopardy protection, the Legislature intended to extend that protection by guarding against multiple punishments for the same primary evil — or single-evil act— by way of legislating against that same evil in two separate statutes. See 515 So.2d at 168 (stating that a “reasonable basis for concluding that the legislature did not intend multiple punishments” is “where the accused is charged under two statutory provisions that manifestly address the same evil and no clear evidence of legislative intent exists”). In such instances, “the most reasonable conclusion usually is that the legislature did not intend to impose multiple punishments.” Id. By ignor *859 ing this scenario, the Court in Valdes has simply dismantled double jeopardy protections and their aim of preventing “the evil of multiple punishments for single offenses.” Id. at 164 (citing Ex parte Lange, 85 U.S. (18 Wall.) at 173).
Furthermore, the Valdes court eliminated double jeopardy protections for those litigants who are punished twice for the same evil or single wrongful act “because of the constant patchwork revisions of Florida’s criminal code.” Carawan, 515 So.2d at 168. The Valdes decision inevitably leads to these types of double jeopardy violations because two statutes, although drafted at different times and addressing different versions of crimes, may “manifestly address the same evil.” Id.
In addition, the Valdes decision offends the principle that a court is not to interpret a statute to achieve an absurd or unreasonable result because “an exclusive Blockbwrger analysis sometimes leads to a result contrary to common sense.” Id. at 167. The case now before this Court exemplifies a scenario where the fear of punishing an individual for the same evil or singular-evil act and the absurdity of a strict Blockbwrger application come to fruition.
In this case, the trial court convicted McKinney of grand theft and robbery with a firearm for acts committed during a single episode. Section 812.014, Florida Statutes (2009), defines grand theft as to knowingly obtain or acquire the property of another with the intent to temporarily or permanently deprive that person of that property or appropriate it to the taker’s use. In contrast, section 812.13, Florida Statutes (2009), defines robbery as the intentional taking of the property of another — by force, violence, or fear — with the purpose of permanently or temporarily depriving the owner of that property. Robbery with a firearm is robbery committed with a firearm. See id. § 812.13(2)(a).
When the definition of grand theft and robbery are juxtaposed to one another and examined concomitantly, it is clear that they involve the same evil, with robbery being a higher degree of grand theft, i.e., it is grand theft accomplished through the use of force. Both of these criminal provisions punish an individual for taking property of another for the purpose of temporarily or permanently depriving him or her of that property. The primary evil involved in these two crimes is also the same, i.e., deprivation of one’s property through the actions of another. The only difference between the two is the degree by which that taking is accomplished. Therefore, a conviction for both in a single episode and single act punishes an individual twice for the same evil and violates double jeopardy. Valdes may require a contrary result, but Valdes was wrong when this Court issued it, and it remains wrong in application today.
Accordingly, I dissent.
QUINCE, J., concurs.